IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY HUHN MD

        PLAINTIFF                                                       Case No

Vs.

COUNTY OF COOK/COOK COUNTY BOARD OF COMMISSIONERS
NICOLE ALMIRO and
ERIK MIKAITIS

        DEFENDANTS

**PLAINTIFF'S COMPLAINT FOR DEFAMATION AND VIOLATIONS OF FREE SPEECH**

**NOW COMES** PLAINTIFF, GREGORY HUHN MD, by and through his attorney Steven D. Horak, and files this Complaint to redress his former employer and its employees from violating his civil rights including Plaintiff's First Amendment Rights to Free Speech, disparaging Plaintiff's name and reputation, as well as denying him promotion and constructive discharging Plaintiff of 42 U.S.C. § 1983 and other statutes as they apply with 42 U.S.C. § 1983. For his cause of action, Plaintiff states as follows:

1. Plaintiff, Gregory Huhn, is a resident of Chicago, Cook County, Illinois. Plaintiff has at all relevant times been employed by Defendant, Cook County, as the Senior Director of HIV Services and as the Interim Chief of the Division of Infectious Diseases for Defendant Cook County Health. Plaintiff was employed by Cook County Government LE. Plaintiff was given the interim position Chief, Division of Infectious Diseases, Department of Medicine in approximately July 2022.

1

2. Defendant The Cook County Board of Commissioners is the governing board and legislative body of the county. It is comprised of 17 Commissioners; each serving a four-year term and is elected from single-member districts. Each district represents approximately 300,000 residents. The Board of Commissioners is responsible for the management of the affairs of Cook County.

3. Cook County Health(CCH) is the name used to refer to where Plaintiff worked for Cook County as a doctor.

4. County of Cook is a home rule unit of local government pursuant to Article VII § 6(a) of the 1970 Illinois Constitution. Defendant, The Cook County Board of Commissioners is the entity with final decision-making control over Cook County Government LE. Defendant Cook County Board of Commissioners was at all times relevant the governing body for Cook County Government LE. The Board of COOK County had in most cases the final decision-making capacity for Cook County Government LE.

5. Defendant, Nicole Almiro ("Almiro") is an individual and resident of Chicago, Cook County, Illinois and at all times relevant herein, was the Chief Corporate Compliance and Privacy Officer. At all relevant times Almiro was acting under color of state law and had policymaking authority. Plaintiff sues Almiro in her individual and official capacities.

6. Defendant, Erik Mikaitis ("Mikaitis") is an individual and resident of Chicago, Cook County, Illinois at the time which Plaintiff was constructively discharged and told he would not be promoted. Mikaitis became the CEO of Defendant Cook County after

2

Rocha left employment as CEO. At all relevant times Mikaitis was acting under color of state law and had policymaking authority. Plaintiff sues Mikaitis in his official capacity.

7. At all relevant times Mikaitis was acting under color of state law and had policymaking authority. Plaintiff sues Mikaitis in his official capacities.

8. Plaintiff is a highly respected doctor who deals with infectious diseases including Covid and HIV. Plaintiff has participated in numerous studies for infectious disease and was an expert for Covid issues for Cook County.

9. Plaintiff was the Interim Chief, Division of Infectious Diseases, Department of Medicine for the Defendant from approximately July 1, 2022 to the time he was constructively discharged on September 17, 2024.

10. Israel Rocha was an employee of Defendant who was the CEO for Cook County Hospital. Rocha left employment with Defendant Cook County in approximately December 2023.

11. After Israel Rocha left the position as CEO for Defendant, Erik Mikaitis, became the CEO for Defendant Cook County Health.

12. The acts complained of herein by the employees of Defendant Cook County including Israel Rocha, Nicole Alimro, Erik Mikaitis and others were done as official acts. The decision to not promote Plaintiff was an official act of Defendant Erik Mikaitis as well as Cook County Board who had the ability to promote Plaintiff and Mikaitis was the official who had final authority to recommend Plaintiff to the Board and by his decision to not recommend Plaintiff for Promotion and told Plaintiff to take his name out of the running makes Erik Mikaitis a decision maker under the law.

13. Erik Mikaitis is responsible for setting policy in that area for Defendant for Plaintiff's hiring. Mikaitis's decision to tell Plaintiff he would not be promoted was a final decision which he only had power to do.

14. The continued defamation of Plaintiff became a policy and practice of Defendant as Defendants continued to perpetrate a lie about Plaintiff for several years.

**DISPARAGEMENT**

15. Defendants have a history of maligning and disparaging Plaintiff since at least December 2022. The statements are believed to be made numerous times through the time which Defendant's actions constructively discharged the Plaintiff.

16. On or about December 6, 2022, Nicole Almiro stated, at a Teams meeting, that Plaintiff violated the Anti-Kickback statutes to Peter Hart and Jeff McCutchen. Nicole Almiro stated, on or about December 6, 2022, that plaintiff received illegal kickbacks as part of his research activities, including residual research account funds held on behalf of other personnel within the Division of Infectious Diseases that plaintiff supervised as part of his role as the Interim Chief of the Division of Infectious Diseases.

17. On or about December 16, 2022, Nicole Almiro stated that, Plaintiff received $500,000 for a study, sponsored by Gilead, which resulted in illegal inducements for referral, at a Teams meeting with Cook County Health General Counsel, Jeff McCutchan, Plaintiff's Attorney Patricia Hofstra, and Dr. Claudia Fegan CCH Chief Medical Officer.

18. The December 16, 2022 statement by Almiro was untrue and false. Based upon information and belief, Defendant Almiro has republished the defamatory statements

4

with "high degree of awareness of its probable falsity or that [they] had serious doubts as to its truth."

19. The December 6, 2022 and December 16, 2022 statements by Almiro was untrue and false. Based upon information and belief, Defendant Almiro has republished the defamatory statements with "high degree of awareness of its probable falsity or that [they] had serious doubts as to its truth.

20. Based upon information and belief, Plaintiff asserts that Nicole Almiro has made several statements that Plaintiff violated the law and committed felonies and was a criminal including statements through April 24, 2024 that led to the email which Plaintiff received discussed later herein.

21. In January 2023, Israel Rocha and Nicole Almiro went to the CCH's Research Affairs Committee and demanded to them that Plaintiff 's behavior as part of the COMEBACK Study should result in Peer Review. The Doctors who Rocha and Almiro involved refused to refer the Plaintiff for Peer Review as it was without merit.. The Plaintiff had given Rocha a response to Defendant's allegations regarding the COMEBACK Study on December 22, 2002, and this information was withheld from the Doctors involved in the Research Affairs Committee.

22. In February 2023, Defendant conducted a review with its Internal Review Board, (IRB review). The finding of the IRB allowed the research to continue to completion and the COMEBACK Study was not terminated. Plaintiff did not commit illegal acts and did not receive kickbacks. Plaintiff did not receive an inducement for referral.

23. Defendants have no evidence that Plaintiff committed illegal acts, received kickback or received inducements for referrals.

24. Defendant conducted several regulatory and forensic audits for the research Plaintiff was involved with which showed Plaintiff was clear of illegal acts. Even with this information, Defendants continued to malign and disparage the Plaintiff as if he committed felonious acts, received kickbacks or inducement for referrals.

25. The position of Chief, Division of Infectious Diseases became open for Defendant Cook County Hospital. Plaintiff was appointed to said Position as the interim Chief, Division of Infectious Diseases.

26. Plaintiff placed his name in for promotion to the position of Chief, Division of Infectious Diseases which he had held in interim for nearly 2 years.

27. Plaintiff was recommended for the position of Chief, Division of Infectious Diseases, by his supervisor, Peter Hart. Plaintiff was interviewed for the position on January 25, 2024.

28. In a meeting with Claudia Fegan on or about April 18, 2024, Fegan became very serious with Plaintiff and stated she had nothing to do with the promotion and that it is between Plaintiff, Mikaitis and Hart.

29. On April 24, 2024, Plaintiff was told by Peter Hart at about 10:00 am that he needed to withdraw from consideration for the job of Chief, Division of Infectious Diseases. and that he will not receive the promotion to the job of Chief, Division of Infectious Diseases. Also, on or about April 24, 2024 Plaintiff learned that Rocha stated to Peter Hart that "if you knew what I knew, you'd never hire Greg Huhn. Just wait it will all come

out in the forensic audit." This was stated relating to the alleged illegal kickbacks and inducements for referral that Rocha and Almiro communicated to others about Plaintiff.

30. Additionally, Plaintiff also learned that on or about April 24, 2024, Erik Mikaitis, CEO for Defendant Cook County, made the decision to not hire the Plaintiff for the position of Chief, Division of Infectious Diseases, Department of Medicine and told Peter Hart to notify Plaintiff o to take his name out of the running for promotion as there is a cloud around Plaintiff.

31. Additionally, on April 24, 2024, Plaintiff was notified that Defendant CCH management instituted an investigation of practices at The CORE Center, the CCH ambulatory clinic under the clinical leadership of the Plaintiff. From the email it is clear that Almiro and others made statements about Plaintiff that were defamatory as the Defendant was again perpetuating the lie that Plaintiff conducted illegal activity.

32. Based upon information and belief, Erik Mikaitis, Israel Rocha and Almiro made other disparaging comments about Plaintiff to others in Defendant Cook County's organization that were not known until April 24, 2024.

33. On May 3, 2024 at about 10:30 am, Plaintiff told Peter Hart he earned the promotion. Plaintiff replied he would not withdraw his candidacy for the promotion. Plaintiff stated to Hart that "this is a forced retirement." Peter Hart agreed with Plaintiff.

34. Plaintiff's work conditions became intolerable due to the lies and disparagement sent out about him as well as not getting the promotion for the position that he held for nearly two years.

7

35. Defendant's actions and statements created a badge of infamy towards the Plaintiff which made his work situation intolerable.

36. Plaintiff would have lost significant pay by not receiving the Promotion.

**GAG ORDERS ON PLAINTIFF**

37. On or about May 6, 2022 Nicole Almiro, launched an investigation relating to the COMEBACK study and placed a gag order on Plaintiff which limited Plaintiff ability to speak. Said gag order forbid Plaintiff to speak about the compliance review and content of Plaintiff's communications. The letter stated that Almiro would make the investigation known to the public. Defendants never lifted Plaintiffs' restrictions relating to his speech rights. Defendants also never released the findings of the investigation to the public or Plaintiff.

38. Numerous issues had to be addressed for the COMEBACK Study. However due to the restriction of speech which Plaintiff had from Defendant, he was not able to discuss them.

39. Defendant then reinforced the gag order and restrictions of speech a short time later, after the June 19, 2023 communication, in an email from Jeff McCutchan on July 3, 2023. Defendant further said it would not cover Plaintiff for any disputes.

40. The gag order AND/OR Defendant's restriction of Plaintiff's speech negatively impacted Plaintiff and harmed the Plaintiff.

41. Defendant refused to allow Gilead, Inc, the funder of the research, to participate in the COMEBACK Study Audit, which was part of the Investigator Sponsored Research Agreement Regulatory Obligation.

42. On or about April 24, 2024 Defendant CCH through Jeff McCutchan wrote the email that stated CCH leadership has hired a law firm to conduct a review of certain practices. Additionally, CCH stated that Plaintiff cannot discuss the matter with others. Thus again placing additional restrictions on Plaintiff's speech.

43. Plaintiff's understanding of the gag order is he was not allowed to communicate to anyone including the public, **Gilead** or other employees about what was going on at Cook County which included the allegations which were leveled against him. Plaintiff could not speak about his studies with anyone but who was on the letter.

44. Plaintiff has attempted to gain knowledge of the statements made against him and has requested the full forensic audit as well as other information. Defendants have refused to provide said information.

45. On September 19, 2024, Plaintiff went to OIIG and made a complaint against the Defendant for the wrongful acts of Defendants. Defendants and OIIG have not provided a response to Plaintiff.

CONSTRUCTIVE DISCHARGE

46. Plaintiff's employment with Defendant became intolerable while working for Defendant. Plaintiff tried to rectify the problems on numerous occasions, but Defendant refused to answer and correct Plaintiff's concerns.

47. Plaintiff's work for Defendant became intolerable. Some of the factors making Plaintiff's work intolerable are:

   a. Not promoting the Plaintiff.

9

    b.     The continued statements made by Almiro, Rocha, Erik Mikaitis and others who worked for Defendant that Plaintiff was basically a criminal, received kickbacks or inducements.

    c.     Defendant's created a stigma for Plaintiff that he was a criminal and that he was untrustworthy.

    d.     Defendants impermissibly restricted Plaintiff's Speech.

    e.     Defendants attempt to bring Plaintiff up on peer review.

    f.     Defendant made numerous threats to Plaintiff about his employment which also contributed to make Plaintiff's work environment intolerable.

    g.     Plaintiff's wages would be decreased by not being promoted.

## **COUNT I DEFAMATION -- NICOLE ALMIRO**

48. Plaintiff repeats and realleges the paragraphs set out herein into this count above as though fully set forth herein.

49. Defendant Almiro acted under color of state law to deprive Plaintiff of his constitutional rights, as required under 42 USC § 1983 as it relates to the first amendment of the US constitution as well as causing Plaintiff to be defamed under the law of the State.

50. Almiro has a law degree and was admitted to practice Law in Illinois on about bout May 2, 1995. At some point, Almiro became voluntarily inactive and not authorized to practice law in Illinois.

51. Based upon information and belief Almiro made numerous defamatory statements against Plaintiff as well as potential emails relating to Plaintiff committing violations of antikickback statutes which were illegal under the law.

52. Nicole Almiro stated to others who worked for CCH on or about December 6, 2022 and December 16, 2922 that plaintiff received illegal kickbacks and inducements for referral as part of his supervisory role of research activities of the Division of Infectious Diseases, and as the principal investigator of the COMEBACK Study, respectively.

53. Also on April 24, 2024, Plaintiff was notified that defendant CCH management instituted an investigation of practices at The CORE Center, the CCH ambulatory clinic under the clinical leadership of the Plaintiff.   From the email it is clear that  Almiro and others made statements about Plaintiff that were defamatory as the Defendant was again perpetuating the lie that Plaintiff conducted illegal activity.

54. Based upon information and belief, Plaintiff asserts that Nicole Almiro has made several statements that Plaintiff violated the law and committed felonies and was a criminal including in a conversation with Claudia Fegan, Chief Medical Officer, on December 16, 2022 and others at Defendant CCH which had the effect of creating a stigma around Plaintiff that he was a criminal or a person of ill repute.

55. Due to the statements made to Plaintiff on April 24, 2024 as well as the email that Plaintiff received on April 24, 2024 relating to legal investigation, it is clear that Almiro made numerous defamatory statements against Plaintiff which were unknown to Plaintiff at that time until April 24, 2024 that disparaged the Plaintiff's reputation and included statements or inferences that Plaintiff committed felonious acts, received kickbacks or inducement for referrals

11

56. Defendant relied on Almiro's statements to deny the Plaintiff the promotion and to deny Plaintiff his speech rights as allowed under the First Amendment to the United States Constitution.

57. Defendant refused to allow Gilead, Inc, the funder of the COMEBACK Study research, to participate in the COMEBACK Study Audit, which was part of the Investigator Sponsored Research Agreement Regulatory Obligation.

58. Plaintiff was told he should withdraw from consideration as he was involved in illegal activity and would not be promoted.

59. Defendant Almiro republished defamatory statements with "high degree of awareness of its probable falsity or that she had serious doubts as to its truth."

60. Any statement or writing made by Almiro which is unknown to Plaintiff must toll the statute of limitations. Based upon the statements made by Almiro would allow for the statute of limitations to be moved by the republication of said statements.

61. Defendant did several audits which showed Plaintiff was clear of illegal acts. Yet Defendant Almiro continued to malign and disparage the Plaintiff as if he committed felonious acts.

62. Due to the false and disparaging statements of Almiro, Plaintiff was not Promoted by Cook County and was told that he needed to withdraw from consideration.

63. On April 24, 2024, Plaintiff was also notified that CCH leadership, which included Almiro, created a legal review into Plaintiff and it's clear that Almiro made statements to Defendants which were false and defamatory against the Plaintiff. Based upon

information and belief, Almiro made defamatory statements against Plaintiff to institute the legal review.

64. The statements made by Defendants about Plaintiff which are set forth herein were false and made with reckless disregard of their truth or falsity for the purpose of harming Plaintiff's name and reputation.

65. The statements made by Defendant Almiro imputed to Plaintiff that he committed crimes or was a person of ill repute and were, therefore, defamatory per se.

66. Defendant Almiro had a duty not to make and/or publish via writing or oral false statements concerning Plaintiff.

67. As a result of Defendant's Almiro actions, Plaintiff has been injured in his business and reputation and was denied the promotion to Chief, Division of Infectious Diseases, Department of Medicine.

68. Additionally, Defendant's actions caused Plaintiff to be constructively discharged as Plaintiff's working environment became intolerable.

69. As a direct and proximate result of Defendant's wrongful and unlawful termination and publication of false information about Plaintiff, Plaintiff has suffered the loss of his employment, the loss of his salary and benefits, and damage to his reputation and future earning potential.

**COUNT III DEFAMATION COOK COUNTY HEAD OFFICIAL ERIK MIKAITIS**

70. Plaintiff repeats and realleges the Paragraphs listed above as fully set forth herein.

71. DEFENDANT Erik Mikaitis acted under color of state law to deprive Plaintiff of his constitutional rights, as required under 42 USC § 1983 as it relates to the first

13

amendment of the US constitution as well as causing Plaintiff to be defamed under the law of the State.

72. Defendant Erik Mikaitis made the decision to not promote Plaintiff for the position of and to remove his name from consideration for the position of Chief, Division of Infectious Diseases. Mikaitis would not provide Defendant Cook County Plaintiff's name for consideration for the Position of Chief, Division of Infectious Diseases, Department of Medicine. The effect of this act by Mikaitis made him the final policy maker for Defendant.

73. Based upon information and belief Defendant Mikaitis made defamatory statements about Plaintiff, which that Plaintiff was not aware of until April 24, 2024. Said comments included similar allegations to Defendant Almiro that Plaintiff committed felonious acts, received kickbacks or inducement for referrals. Mikaitis statements included statements that Greg Huhn has a cloud around him to Peter Hart who notified Plaintiff on or about April 24, 2024. Such a statement by Mikaitis proves that that Defendant placed a badge of infamy on Plaintiff.

74. Defendants republished defamatory statements with "high degree of awareness of its probable falsity or that she had serious doubts as to its truth."

75. The statements made by MiKaitis imputed to Plaintiff that he committed crimes and were, therefore, defamatory per se.

76. Defendant had a duty not to make and/or publish via writing or oral false statements concerning Plaintiff.

14

77. As a result of Defendant's actions, Plaintiff has been injured in his business and reputation and was denied the promotion to Chief, Division of Infectious Diseases and constructively discharged.

78. As a direct and proximate result of Defendant's wrongful and unlawful actions, and publication of false information about Plaintiff, Plaintiff has suffered the loss of his employment, had his rights to free speech infringed upon, the loss of his salary and benefits, and damage to his reputation and future earning potential.

### COUNT IV DEFAMATION --COOK COUNTY

79. Plaintiff repeats and realleges the Paragraphs listed above as fully set forth herein.

80. DEFENDANT COOK COUNTY BOARD OF COMMISSIONERS acted under color of state law to deprive Plaintiff of his constitutional rights, as required under 42 USC § 1983 as it relates to the first amendment of the US constitution as well as causing Plaintiff to be defamed under the law of the State.

81. Defendant's employees in the scope of their employment including Erik Mikaitis, Nicole Almiro, Israel Rocha and others that will become aware through discovery of this matter made numerous false statements against Plaintiff including that Plaintiff received illegal kickbacks, inducements for referral and that Plaintiff had a cloud over him.

82. Defendant did not follow its policy and its employee handbook when dealing with the Plaintiff.

83. Defendant Erik Mikaitis made the decision to not promote Plaintiff for the position of and to remove his name from consideration for the position of Chief, Division of Infectious Diseases.

84. Defendant COOK COUNTY BOARD OF COMMISSIONERS is the entity that approves promotions and subsequently approved the promotion of Sharon Welbel, MD for the position which Plaintiff should have received.

85. Defendant Cook County ultimately would not promote Plaintiff based upon the actions of Mikaitis and Almiro and others.

86. Defendant COOK COUNTY BOARD OF COMMISSIONERS through its employees had a history of maligning and disparaging Plaintiff since at least December 2022. The statements are believed to be made numerous times through the time which Defendant's actions constructively discharged the Plaintiff and were used to not promote the Plaintiff.

87. Defendant's employees in the scope of their employment including Erik Mikaitis, Nicole Almiro, Israel Rocha and others that will become aware through discovery of this matter made numerous false statements against Plaintiff that Plaintiff received illegal kickbacks, should not be hired and other comments which are stated herein.

88. Defendant COOK COUNTY BOARD OF COMMISSIONERS through its employees republished defamatory statements with "high degree of awareness of its probable falsity or that she had serious doubts as to its truth."

89. Defendant Cook County through its employees created a Badge of Infamy and negative stigma to Plaintiff relating to Plaintiff's reputation that Plaintiff was a criminal, felon, should not be trusted, received kickbacks and/or inducements for referral.

90. Defendant Cook County conducted several audits or other investigation which showed Plaintiff was clear of illegal acts, kickbacks or inducements for referral. Yet Defendant

16

continued to malign and disparage the Plaintiff as if he committed felonious acts. But for the defamatory statements and stigma Defendant's employees placed upon the Plaintiff was not Promoted by Cook County, told he would not be hired for the position of Chief, Division of Infectious, was told to withdraw his name for promotion, was placed on a gag order by Defendant and was ultimately constructively discharged by Defendant. The statements made by Defendant's employees further imputed to Plaintiff that he committed crimes and were, therefore, defamatory per se.

91. Defendant COOK COUNTY BOARD OF COMMISSIONERS had a duty not to make and/or publish via writing or oral false statements concerning Plaintiff.

92. As a result of Defendant COOK COUNTY BOARD OF COMMISSIONERS' actions, Plaintiff has been injured in his business and reputation and was denied the promotion to Chief, Division of Infectious Diseases and constructively discharged.

93. As a direct and proximate result of Defendant's wrongful and unlawful actions, and publication of false information about Plaintiff, Plaintiff has suffered the loss of his employment, had his rights to free speech infringed upon, the loss of his salary and benefits, and damage to his reputation and future earning potential.

### **COUNT V FIRST AMENDMENT RIGHT GAG ORDER COOK COUNTY HEALTH**

94. Plaintiff realleges the foregoing paragraphs into this count as set forth herein.

95. The imposition of a gag order on a municipal employee may violate the employee's First Amendment right to free speech, but the determination depends on several factors, including whether the employee was speaking as a private citizen on a

17

matter of public concern and whether the government's interest in maintaining workplace efficiency outweighs the employee's interest in free expression.

96. Gag orders, are considered a significant First Amendment issue. Courts have recognized that threatening penalties for future speech, known as prior restraint, constitutes a quintessential First Amendment violation unless narrowly tailored to serve a compelling governmental interest

97. Defendant Cook County acted under color of state law to deprive Plaintiff of his constitutional rights to free speech, as required under 42 USC § 1983 as it relates to the first amendment of the US constitution when it placed gag orders on Plaintiff.

98. Defendant's gag orders were overly broad it infringed on Plaintiff speech rights including Plaintiff right and his ability to speak in his personal capacity as a private citizen.

99. Defendant's gag orders were not narrowly tailored.

100. As part of the Defendant's restraint of Plaintiff's speech, defendant provided no notices or opportunity for hearings relating to the limitations of his speech.

101. Defendant denied Plaintiff his constitutionally protected right to free speech and denied him his due process rights when it placed the gag order over Plaintiff and continued the gag order for several years which Plaintiff is still under.

102. Defendant communicated to Plaintiff's colleagues and other individuals that Plaintiff committed crimes, received kickbacks or that if others knew what Plaintiff had done, they would never hire the Plaintiff. Due to Defendant's restrictions

imposed upon Plaintiff's speech, Plaintiff was not allowed to respond to the personal attacks and disparaging statements leveled against him.

103. Defendant's restriction of Plaintiff speech, was significant enough so that Plaintiff could not speak and deterred Plaintiff from defending himself from the Defendant's employees disparaging statements about Plaintiff as well as other areas that Plaintiff should have been allowed to speak about.

104. The Proximate cause of Defendant's limitations on speech to Plaintiff, was to constructively discharge the Plaintiff and to harm Plaintiff's reputation.

105. Plaintiff was damaged by Defendant Cook County's limitations of Plaintiff speech such as the gag orders.

106. As a direct and proximate result of Defendant's wrongful and unlawful actions, and publication of false information about Plaintiff, Plaintiff has suffered the loss of his employment, the loss of his salary and benefits, and damage to his reputation and future earning potential. In addition, the gag orders imposed upon Plaintiff were factors in making Plaintiff's employment intolerable that created the constructive discharge of Plaintiff's employment from Defendant.

**WHEREFORE, Plaintiff, GREGORY HUHN MD, prays for judgment against Defendants, as follows:**

A. Awarding Plaintiff make whole relief including front pay and lost benefits in the amount of at least $2,000,0000;

B. Awarding the Plaintiff damages for his pain and suffering and loss of his reputation and other compensatory damages

19

C. Awarding Plaintiff reasonable attorneys' fees and costs;

D. Enjoining Defendant from placing gag orders and restrictions of speech that are not narrowly tailored.

E. Place Plaintiff in the position of Chief of the Division of Infectious Diseases for Defendant Cook County Health with all backpay and benefits and raises as if he had been promoted.

F. Require Defendant to issue a statement that Plaintiff did not commit illegal acts, receive kickbacks and other statements to clear Plaintiff's name and to remove the badge of infamy that Defendant's have placed upon the Plaintiff.

G. Order Defendant to no longer disparage the Plaintiff.

H. And award such other and further relief as the court may consider proper.

## JURY DEMAND

**Plaintiff demands a trial by jury on all claims.**

_____

Steven D Horak # 6207126
940 Knollwood Dr
Buffalo Grove IL 60089
847-877-3120
Steve@stevenhoraklaw.com
Attorney for Plaintiff Kim Fox